# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **AUTOMOBILE CONSUMER SERVICES, INC.** | : | Case No. |
| 6249 Stewart Avenue | : | Judge |
| Cincinnati, OH 45227 | : | |
| and | : | |
| **TARRY E. SHEBESTA** | : | **COMPLAINT** |
| 7036 Lighthouse Point | : | |
| Maineville, OH 45039 | : | **(Jury Demand Endorsed Hereon)** |
| Plaintiffs, | : | |
| vs. | : | |
| **PURECARS TECHNOLOGIES, LLC** | : | |
| 931 Monroe Dr. NE, Suite A102 359 | : | |
| Atlanta, GA 30308 | : | |
| Defendant. | : | |

Plaintiffs Automobile Consumer Services, Inc. and Tarry E. Shebesta for their Complaint against Defendant PureCars Technologies, LLC ("PureCars") allege as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Automobile Consumer Services, Inc. ("ACS") is an Ohio corporation with a principal place of business at 6249 Stewart Avenue, Cincinnati, Ohio 45227.

2. Plaintiff Tarry Shebesta ("Shebesta") is an individual residing at 7036 Lighthouse Point, Maineville, Ohio 45039. He is the President and CEO of ACS.

3. Defendant PureCars Technologies, LLC ("PureCars") is a Delaware corporation with its principal place of business at 931 Monroe Drive, NE, Suite A102 359, Atlanta, Georgia 30308.

## II. JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as each Plaintiff is a citizen of a different state than Defendant, and the amount in controversy is in excess of $75,000.00.

5. This Court has personal jurisdiction over PureCars because it transacts business in this state, because all or a substantial portion of the conduct at issue took place within this jurisdiction, and because PureCars caused harm to ACS and Shebesta in this District.

## III. BACKGROUND

6. PureCars provides automotive digital advertising and merchandising solutions to automobile and other vehicle dealerships and dealer groups throughout the country.

7. Shebesta is a pioneer in the automotive digital industry. For more than 30 years, Shebesta has been developing digital platforms and technologies to assist consumers and dealers in the online vehicle purchasing industry. He has been recognized by Business Week, was a guest speaker on Bloomberg TV and CNBC, and is a past president and current board member of the National Vehicle Leasing Association.

8. truPayments is a financial technology business. It features a monthly car payment quoting engine, a patent-pending technology developed largely by Shebesta. truPayments has a suite of technology products and web services to support consumers, auto dealers, lenders, and related entities.

9. PureCars approached Shebesta in January 2021 about acquiring truPayments LLC, a Delaware limited liability company ("truPayments"), which was then owned on a majority basis by ACS, of which Mr. Shebesta is a shareholder and serves as its President and CEO.

10. PureCars articulated a specific desire to integrate the technology into its current offerings and upsell to its customer base and beyond. PureCars also expressly represented that it could and would provide substantial and meaningful sales support to expand the truPayments base – something that truPayments did not have in place. The vision PureCars sold to Shebesta was that he would continue to be the technical mastermind behind truPayments and other technologies, strategies, and business opportunities that he currently had working and would develop, integrate with the PureCars advertising platform and services, and which the PureCars sales team would then use to diligently and materially grow the truPayments business unit.

11. Shebesta would not have proceeded with the sale of truPayments to PureCars in the absence of these express promises and representations. In fact, ACS, controlled by Shebesta, agreed to accept a substantially lower sales price than it otherwise would have because of PureCars' promises, representations, and the opportunity for a lucrative and ongoing relationship with PureCars.

12. The Equity Purchase Agreement (the "Agreement") among PureCars, ACS, truPayments, and certain other entities clearly reflects this intent and sets forth a $1.5 million Earn-Out Payment based upon sales in excess of baselines in a variety of sales space categories. (Exhibit A). These payments were to be made on a monthly basis. Section 2.6(f) outlines that there was no guarantee that the sales goals triggering the earnout payments would be achieved. However, it states expressly, "Notwithstanding the foregoing, during the Earn-Out Period, Buyer agrees that

Buyer shall not take any actions the primary intent of which are to avoid the accrual or payment of any Monthly Earn-Out Payment."

13. In connection with the acquisition, PureCars also offered Shebesta employment, purportedly as a member of the executive and strategy team. PureCars also led Shebesta to believe that he would be working with its CEO given that said CEO urged Shebesta to agree to the deal. Shebesta's position was to be Head of Strategic Partnerships & Industry Relations – Personalized Shopping & Digital Retailing. His employment commenced on July 1, 2021, the same date as the execution of the Agreement.

14. Shebesta was given a base salary of $190,000. His employment offer also outlined a lucrative bonus opportunity, tied to the profitability of software subscription revenue, including the truPayments business. (Exhibit B).

15. As outlined above, PureCars acquired truPayments on July 1, 2021. Almost immediately thereafter, PureCars started taking direct, intentional, and affirmative actions which could only be construed as calculated to avoid the accrual and payment of the Earn-Out Payments.

16. Consistent with the role that was given to him, Shebesta proposed a variety of ideas for improving and selling truPayments. PureCars then CEO Jeremy Anspach even advised the PureCars team "to be sure all ideas from tarry are processed into the go forward plan with jeff as upselling tru to 75%+ of our customer base is key and was why we bought the business." Despite those words, PureCars failed to support or commit any resources to Mr. Shebesta's ideas and input and, ultimately, same were never implemented. Equally surprising, Mr. Shebesta was excluded from strategy meetings and was essentially shut out with regard to truPayments soon after the transaction was closed. Most disturbing is the fact that the PureCars sales team that was supposed

to support him – the incentive for ACS and Mr. Shebesta to sell the business – was expressly instructed NOT to even attempt to sell truPayments to large segments of potential customers.

17. This instruction first came on September 9, 2021, just weeks following the closing of the transaction. The sales team was instructed not to sell into certain non-auto customer groups, including RV, Powersports, and independent dealer groups. The team was further instructed not to prospect those groups, and that they would not be compensated for sales to those groups. These groups were specifically contemplated as potential and current growth targets in the Agreement and identified as bases for the Earn-Out Payments.

18. With regard to sales that were made in the automobile industry, PureCars did not provide the necessary support staff and infrastructure for onboarding new customers. Customers frequently reported same. As a result, the cancellation rate was above normal. The process was so frustrating for the onboarding representative at PureCars that she was frequently in tears and ultimately put in her resignation.

19. PureCars also articulated supposed obstacles to selling truPayments into the lucrative franchised automobile dealer space. Shebesta proposed a number of strategies and technologies to overcome those obstacles. PureCars ignored all of them, arbitrarily and without justification.

20. PureCars' repeated and calculated actions were clearly intended to disrupt truPayments sales and, thereby, defeat any obligation to make Earn-Out Payments. As a result of this conduct, ACS did not receive any of this consideration from the Equity Purchase Agreement. These actions also materially impacted Shebesta's ability to earn the annual bonus opportunity set forth in his offer letter.

21. It is clear in retrospect that PureCars had no serious intention of growing the truPayments platform, providing Shebesta a meaningful role within the PureCars organization, or creating the type of relationship repeatedly represented to Shebesta during the negotiation process. ACS and Shebesta relied on these representations in deciding to move forward with the transaction, to their ultimate detriment given PureCars' actions (or lack thereof).

22. Not only did PureCars intentionally fail to execute on the promised strategies and its material representation, it then terminated Shebesta suddenly and without merit on June 30, 2022. PureCars stripped Shebesta of one of his most lucrative inventions; purposely obstructed its sale in order to deny him the benefit of his bargain; and then summarily dismissed him from the company.

## COUNT I
### (Breach of Contract)

23. ACS and Shebesta incorporate paragraphs 1 through 22 above by reference as if fully rewritten herein.

24. The Equity Purchase Agreement was a valid and enforceable contract among PureCars, ACS, truPayments, and the other entities a party thereto.

25. ACS fully performed its obligations under the terms of the Agreement.

26. The Agreement expressly prohibited PureCars from taking actions intended to avoid the accrual or payment of the Earn-Out Payments to ACS.

27. Despite that Agreement, PureCars engaged in a pattern of conduct clearly intended to shut down truPayments sales and avoid the accrual and payment of the Earn-Out Payments.

28. ACS is entitled to compensatory damages equal to its maximum Earn-Out Payments under the Agreement.

## COUNT II
### (Promissory Estoppel)

29. ACS and Shebesta incorporate paragraphs 1 through 28 above by reference as if fully rewritten herein.

30. PureCars approached ACS and Shebesta about purchasing truPayments. PureCars made clear and unambiguous promises to Shebesta – in his personal capacity and in his role as President and CEO of ACS – that PureCars would provide a growth platform and sales team to expand the truPayments customer base. It offered the mirage of a $1.5 million earn-out opportunity based upon this expansion and growth. PureCars made further promises that Shebesta would be the technical mastermind behind the expansion of truPayments and other technologies and promised him bonus opportunities tied in large part to this projected growth of truPayments. PureCars made these promises in an effort to convince Shebesta to consent to its acquisition of truPayments.

31. Shebesta reasonably relied upon these promises to the detriment of himself and ACS, by agreeing to sell truPayments at a discounted price and to become an employee of PureCars.

32. Shebesta and ACS have suffered harm as a result of their reliance, including agreeing to a lower sales price for truPayments, and losing opportunities for earn-out payments and bonuses that would have been achieved but for the intentional and wrongful conduct of PureCars in interfering with the sale of truPayments products.

33. These acts by PureCars were malicious, wanton, and done with specific intent to injure Plaintiffs, thereby entitling ACS and Shebesta to compensatory and punitive damages in an amount to be determined at trial.

## COUNT III
## (Fraudulent Misrepresentation)

34. ACS and Shebesta incorporate paragraphs 1 through 33 above by reference as if fully rewritten herein.

35. PureCars approached ACS and Shebesta about purchasing truPayments. PureCars made material misrepresentations to Shebesta – in his personal capacity and in his role as President and CEO of ACS – that PureCars would provide a growth platform and sales team to expand the truPayments customer base. The Agreement reflected a $1.5 million earn-out opportunity based upon this expansion and growth. PureCars made further material misrepresentations that Shebesta would be the technical mastermind behind the expansion of truPayments and other technologies and promised him bonus opportunities tied in large part to this projected growth of truPayments. PureCars made these material misrepresentations knowing them to be false, knowing that PureCars did not intend to promote truPayments in the manner promised, and with the intent to induce ACS and Shebesta to consent to an acquisition of truPayments.

36. Shebesta reasonably relied upon these misrepresentations to the detriment of himself and ACS, by agreeing to sell truPayments at a discounted price and become an employee of PureCars.

37. Shebesta and ACS have suffered harm as a result of their reliance, including agreeing to a lower sales price for truPayments, and losing opportunities for Earn-Out Payments and bonuses that would have been achieved but for the intentional and wrongful conduct of PureCars in interfering with the sale of truPayments products.

38. These acts by PureCars were malicious, wanton and done with intent to injure defendants, thereby entitling ACS and Shebesta to compensatory and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, ACS and Shebesta respectfully requests that this Court:

A. Award Defendants compensatory, and punitive damages in excess of $1.5 million;

B. Award Defendants all costs and expenses incurred in connection with this action, including its reasonable attorneys' fees; and

C. Grant Defendants such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

Dated: August 18, 2022

Respectfully submitted,

/s/ *Deborah S. Brenneman*
Deborah S. Brenneman
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Dayton, Ohio 45342
Telephone: (513) 352-6638
Facsimile: (937) 443-6635
Debbie.Brenneman@ThompsonHine.com

Caitlin R. Thomas (#0093857)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 566-5500
Facsimile: (216) 566-5800
Caitlin.Thomas@ThompsonHine.com

*Attorneys for Plaintiffs Automobile Consumer Services, Inc. and Tarry E. Shebesta*

9